**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ARIE NATASHA RIVERS,        ) No. ED CV14-01628-AS
                         )
         Plaintiff,    ) **MEMORANDUM OPINION**
      v.              )
                         )
CAROLYN W. COLVIN,        )
Acting Commissioner of the   )
Social Security Administration, )
                         )
         Defendant.    )
                         )

**PROCEEDINGS**

On May 11, 2011, Plaintiff Arie Natasha Rivers ("Plaintiff") applied for Supplemental Security Income ("SSI") based on alleged physical and mental impairments and asserting disability since January 1, 1987. (A.R. at 170-95).   The Administrative Law Judge ("ALJ"), Vadim Mozyrsky, examined the records and heard testimony from Plaintiff and a vocational expert ("VE"), Sandra Fioretti, on March 5, 2013. (A.R. at 37-67).   On, April 12, 2013, the ALJ denied Plaintiff benefits in a written decision. (A.R. at

1

20-32).  The Appeals Council denied review of the ALJ's decision. (A.R. at 1-5).

On August 14, 2014, Plaintiff filed a Complaint, pursuant to 42 U.S.C. §§ 405(g) and 1383(c), alleging that the Social Security Administration erred in denying her disability benefits. (Docket Entry No. 3).  On December 18, 2014, Defendant filed an Answer to the Complaint, (Docket Entry No. 13), and the Certified Administrative Record ("A.R."), (Docket Entry No. 14).  The parties have consented to proceed before a United States Magistrate Judge.  (Docket Entry Nos. 9, 10).  On April 14, 2015, the parties filed a Joint Stipulation ("Joint Stip.") setting forth their respective positions on Plaintiff's claim.  (Docket Entry No. 18).

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

1.   General Disability Evaluation

"Social Security disability benefits claimants have the burden of proving disability."  Bellamy v. Sec'y Health & Human Servs., 755 F.2d 1380, 1380 (9th Cir. 1985).  A claimant is disabled if she has the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 905(a).  In order to determine whether a claimant is disabled, ALJs follow a five-step process set forth in 20 C.F.R. § 416.920(a)(4).  "The claimant bears the burden of proving steps one through four."  Parra v. Astrue, 481

F.3d 742, 746 (9th Cir. 2007).

At step one, the ALJ must determine whether or not claimant is actually engaged in any "substantial gainful activity," as defined by 20 C.F.R. § 416.972.  If claimant is not so engaged, the evaluation continues to step two.  See 20 C.F.R. § 416.920(a)(4)(i).

At step two, the ALJ determines whether the claimed physical or mental impairments are severe.  20 C.F.R. § 416.920(a)(4)(ii).  When determining severity, "the ALJ must consider the combined effect of all of the claimant's impairments on her ability to function, without regard to whether each alone was sufficiently severe." Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing 42 U.S.C § 423(d)(2)(B)).  Impairments are considered severe unless the evidence "establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"  Id. at 1290 (quoting Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988)).  "[I]f the ALJ concludes that the claimant does have a medically severe impairment, the ALJ proceeds to the next step in the sequence." Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005); See also 20 C.F.R. § 416.920(a)(4)(ii).

At step three, the ALJ considers whether the claimant's impairments are disabling.  20 C.F.R. § 416.920(a)(4)(iii).  The claimant is considered disabled if her purported conditions meet or are medically equivalent to a listing found in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "[An] impairment is medically equivalent to a listed

impairment in appendix 1 if it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 404.1526. While the objective medical evidence of equivalence may not meet a listing, "[m]edical equivalence must be based on medical findings." Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir. 1999) (citing 20 C.F.R. § 404.1526).

If the ALJ concludes that claimant is not disabled at step three, the ALJ moves to step four and considers whether the claimant can return to her past relevant work. Burch, 400 F.3d at 679; See 20 C.F.R. § 416.920(a)(4)(iv). In order to do so, the ALJ determines claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 416.920(a)(4)(iv). A claimant's RFC is "what [claimant] can still do despite [claimant's] limitations," and is "based on all the relevant medical and other evidence in [the] case record." 20 C.F.R. 416.945(a)(1). If the claimant's RFC dictates that she can return to her past relevant work, she is not considered disabled. Burch, 400 F.3d at 679.

If the claimant proves in step four that she cannot return to her past relevant work, the ALJ proceeds to step five. 20 C.F.R. § 416.920(a)(4)(v). At step five "the burden of proof shifts to the Secretary to show that the claimant can do other kinds of work." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). At this point, ALJs "can call upon a vocational expert to testify as to: (1) what jobs the claimant, given his or her [RFC], would be able to do; and (2) the availability of such jobs in the national economy." Tackett, 180 F.3d at 1101. If claimant does not have the RFC to work

4

in any available jobs, she is considered disabled.   20 C.F.R. § 416.920(a)(4)(v).

    2.   Evaluation of Mental Impairments

    In addition to the general disability evaluation, ALJs also use a "special technique" when evaluating a claimant with alleged mental impairments.   20 C.F.R. § 416.920a(a).   Per the technique, the ALJ first evaluates whether the claimant has "a medically determinable impairment."   20 C.F.R. 416.920a(b)(1).   Once a medically determinable mental impairment is established, the ALJ then "rate[s] the degree of functional limitation resulting from the impairment(s)."   20 C.F.R. 416.920a(b)(2).   The "[a]ssessment of functional limitations is a complex and highly individualized process."   20 C.F.R. § 416.920a(c)(1).   The ALJ rates the degree of limitation over four broad function areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation.   Degrees of limitation of the first three functional areas are rated on the following scale: none, mild, moderate, marked, and extreme.   The fourth functional area is rated as: none, one or two, three, four or more.   "The last point on each scale represents a degree of limitation that is incompatible with the ability to do any gainful activity."   20 C.F.R. 416.920a(c)(4).

    Generally, if a claimant's limitations in the first three areas are "none" or "mild" and "none" in the fourth area, the impairment will be found non-severe at step two.   20 C.F.R. 416.920a(d)(1).   If

5

the impairment is severe, the ALJ will then continue to step three and determine whether the impairment meets or equals a listing.   20 C.F.R. § 416.920a(d)(2).   If the mental impairment does not meet a listing and is not equivalent in severity to a listed mental disorder, the ALJ must then determine the claimant's residual functional capacity and proceed with steps four and five.   20 C.F.R. § 416.920a(d)(3).

## BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

In applying for SSI benefits, Plaintiff alleged the following disabling impairments: asthma, hypertension, mental health issues, and physical disability.   (A.R. at 188).   The alleged onset date of these impairments was January 1, 1987.   (A.R. at 20, 170).   At the March 5, 2013, hearing before the ALJ, Plaintiff testified that her mental impairments, most notably depression, prevent her from working full-time.   (A.R. at 44).   Specifically, Plaintiff stated that her depression sometimes causes her to lock herself in her room and isolate herself for weeks at a time.   (A.R. at 44).   Plaintiff testified that she was presently taking Cogentin and Risperdal to deal with her mental impairments, and that in the past she had taken Paxil.[1]   (A.R. at 44-45).   Plaintiff acknowledged that, although the medications were only marginally helpful, they helped her more than not being on any medications at all.   (A.R. at 46).   Plaintiff also stated that she has both "good days" and "bad days."   (A.R. at 48).   Plaintiff claimed that, on good days, she is able to get up, prepare

---

[1]   The medical records refer to these medications by both their generic and brand names.   As a result, Cogentin is referred to as Benztropine, Risperdal as risperidone, and Paxil as paroxetine.

a meal, and clean her home.   (A.R. at 48-49).   She also testified that she spends time with her grandchildren and spends a great deal of time sitting on the porch or beneath a tree.   (A.R. at 52). Plaintiff testified that on bad days, however, she isolates herself in her room and tries to stabilize her mental state.   (A.R. at 49-50).   Plaintiff also noted that she experiences paranoia which results in difficulties leaving her home or interacting with the public.   (A.R. at 49-50).

The ALJ applied the five-step process to the evaluation of the record in Plaintiff's case.   (A.R. at 20-32).   At step one, the ALJ determined that Plaintiff had not engaged in any "substantially gainful activity since May 11, 2011, the application date." (A.R. at 22).   At step two, the ALJ examined the objective medical evidence, heard Plaintiff's testimony, and found that she has the following severe impairments: depression and bipolar disorder.   (A.R. at 22). The ALJ found that Plaintiff also had the following non-severe impairments: asthma, hypertension, degenerative disc disease, hepatitis C, and substance addiction disorder.   (A.R. at 22).   The ALJ found that Plaintiff's hypertension, asthma, and hepatitis C were non-severe because they "are controlled with medication."   (A.R. at 22).   Furthermore, the ALJ found that the record lacked objective medical evidence that Plaintiff's degenerative disc disease "has lasted or can be expected to last for a continuous period of not less than 12 months."   (A.R. at 22).

At step three, the ALJ found that Plaintiff's severe impairments did not meet or equal a listing found in 20 C.F.R. Part 404, Subpart

P, Appendix 1.  (A.R. at 23-24).  In making this determination, the ALJ found that Plaintiff was mildly limited in activities of daily living, mild-to-moderately impaired in social functioning, and moderately impaired regarding concentration, persistence, or pace.  (A.R. at 24).  Furthermore, the ALJ found that Plaintiff had not experienced any episodes of decompensation lasting for an extended duration.  (A.R. at 24).  Accordingly, the ALJ concluded that Plaintiff's impairments did not meet or equal the criteria required to show that Plaintiff had a disabling mental disorder.  (A.R. at 23-24).

Before proceeding to step four, the ALJ found that Plaintiff had the RFC to perform less than the full range of medium work, finding specifically that Plaintiff:

> can lift and/or carry fifty pounds occasionally and twenty five pounds frequently . . . can stand and/or walk six hours in an eight hour workday . . . can push and pull as much as lifting and carrying . . . can occasionally climb ladders and scaffolds while performing all other postural activities, such as climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling, on a frequent basis . . . must avoid concentrated exposure to humidity, wetness, fumes, odors, dusts, gas, poor ventilation, extreme cold, and extreme heat . . . is limited to simple tasks and simple work-related decisions . . . [and] can occasionally interact with coworkers and the public.

(A.R. at 24-25).

The ALJ based Plaintiff's RFC on the opinion of Dr. Ernest Bagner, III, a consultative examining psychiatrist, (A.R. at 29, 546-50), and the opinions of the state agency medical consultants.  (A.R.

at 29, 74-103). Furthermore, the ALJ found that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms [were] not entirely credible." (A.R. at 27). The ALJ based this adverse credibility finding on the lack of objective medical evidence supporting Plaintiff's statements, Plaintiff's inconsistent statements regarding her disability, and that treatment and medications had been effective in controlling Plaintiff's symptoms. (A.R. at 25-27).

At step four, the ALJ determined that Plaintiff did not have any past relevant work. (A.R. at 30).

At step five, based on testimony from the vocational expert, who had considered Plaintiff's limitations, the ALJ concluded that Plaintiff possessed the RFC to work as a machine feeder, hand packager, or kitchen helper. (A.R. at 31). Additionally, the ALJ found that these jobs exist in significant numbers in the national economy. (A.R. at 31). As a result of these findings, the ALJ concluded that Plaintiff was not disabled under 42 U.S.C. § 423(d)(1)(A). (A.R. at 32).

### STANDARD OF REVIEW

This court reviews the Administration's decisions to determine if: (1) the Administration's findings are supported by substantial evidence; and (2) the Administration used proper legal standards. Smolen, 80 F.3d at 1279. "Substantial evidence is more than a scintilla, but less than a preponderance." Andrews v. Shalala, 53

F.3d 1035, 1039 (9th Cir. 1995).   To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion." Auckland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 1997) (alteration in original) (internal quotation omitted).   As a result, "[i]f evidence can reasonably support either affirming or reversing the ALJ's conclusion, [a] court may not substitute its judgment for that of the ALJ." Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1196 (9th Cir. 2004).

**PLAINTIFF'S CONTENTIONS**

Plaintiff contends that (1) the ALJ failed to "properly consider[] the relevant medical evidence of record in this case in assessing Plaintiff's residual functional capacity." (See Joint Stip. at 3).   Despite the fact that Plaintiff's contentions are listed as a single issue, Plaintiff also ostensibly alleges that: (1) the ALJ failed to consider Plaintiff's prior disabled status; (2) the ALJ failed to properly consider Plaintiff's testimony regarding her mental impairments; and (3) the ALJ failed to properly consider the objective medical evidence of Plaintiff's impairment. (See Joint Stip. at 3-12).

**DISCUSSION**

After considering the record as a whole, the Court finds that the Commissioner's findings are supported by substantial evidence and

are free from material legal error.

**A.    The ALJ Was Not Required to Consider Plaintiff's Prior Disabled Status**

Plaintiff previously applied for Supplemental Security Income, on July 14, 1999, based on alleged mental impairments. (A.R. at 72). After an administrative hearing, the ALJ in that case found that Plaintiff had been under disability since July 14, 1999, because she met the listing for schizoaffective disorder. (A.R. at 72). In 2001, Plaintiff was incarcerated for attempted murder. (A.R. at 533). Due to her incarceration, her benefits were terminated. (Joint Stip. at 4). Ten years later, in July, 2011, Plaintiff was released from prison on parole. (A.R. at 533–44). Plaintiff alleges that the ALJ in the present case erred in failing to grant presumptive authority to the prior finding of disability or, in the alternative, failing to mention the prior finding in the present decision. (Joint Stip. at 3–5).

The Ninth Circuit has held that a claimant is not entitled to a presumption of continuing disability after a non-medical termination of disability benefits. See Stubbs-Danielson v. Astrue, 539 F.3d 1169–72 (9th Cir. 2008). In Stubbs-Danielson, the plaintiff had been awarded SSI benefits in 1986, which she received until her incarceration in 1995. Id. at 1171. Per social security regulations, the plaintiff's benefits were suspended upon incarceration, and terminated after twelve months of continuous

suspension.  Id. at 1172.  In 2002, two years after her release from custody, the plaintiff reapplied for SSI, arguing that her benefits should be reinstated on the basis of continuing disability.  Id. at 1171-72.  The court rejected the plaintiff's argument, finding that "there is no basis for applying a presumption of continuing disability where, as here, a claimant's reapplication comes at least 6 years after a termination of benefits and more than 15 years after her previously successful application."  Id. at 1172.

Here, Stubbs-Danielson is controlling.  Plaintiff's prior SSI benefits were terminated due to Plaintiff's incarceration.  (Joint Stip. at 4).  Plaintiff's previous grant of SSI was in 1999, (A.R. at 70-73), and she reapplied in 2011, (A.R. at 22).  Like Stubbs-Danielson, Plaintiff's "reapplication comes at least 6 years after the termination of benefits" and over a decade since her prior award of benefits.  539 F.3d 1172.  As a result, "there is no basis for applying a presumption of continuing disability" in this case.  Id. Because Plaintiff was not entitled to a presumption of continuing disability, the ALJ was not required to consider the prior finding of disability.[2]

//

//

//

//

_____

[2] Plaintiff asserts disability since January 1, 1987.  However, as the ALJ properly noted in his decision, (A.R. at 27), SSI benefits are not payable prior to the month following the month claimant filed the application, 20 C.F.R. § 416.335.  As a result, the ALJ was not required to examine evidence unrelated to Plaintiff's 2011 application for SSI benefits.

1  **B.   The ALJ Properly Considered Plaintiff's Testimony Regarding Her**
2       **Mental Impairments**

3

4       Plaintiff alleges that the ALJ "failed to address in any
5  meaningful way Plaintiff's testimony under oath that she experiences
6  good days as well as bad periods of time where she would clearly not
7  be capable of attending to work related responsibilities." (Joint
8  Stip. at 7). Since the ALJ found that Plaintiff's testimony
9  regarding the severity of her impairments was only partially
10 credible, the Court construes this contention as attacking the ALJ's
11 credibility determination.

12

13      "An ALJ engages in a two-step analysis to determine whether a
14 claimant's testimony regarding subjective pain or symptoms is
15 credible." Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).
16 "First, the ALJ must determine whether the claimant has presented
17 objective medical evidence of an underlying impairment 'which could
18 reasonably be expected to produce the . . . symptoms alleged.'" Id.
19 (quoting Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir.
20 2007)). If a claimant has produced such evidence, an ALJ "can reject
21 the claimant's testimony about the severity of her symptoms only by
22 offering specific, clear and convincing reasons for doing so."
23 Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). Furthermore,
24 "[t]he ALJ must state specifically which symptom testimony is not
25 credible and what facts in the record lead to that conclusion." Id.
26 at 1284 (citations omitted).
27 //
28 //

1

2

      1.   Lack of Objective Medical Evidence

3

     Ordinarily, an ALJ may not find that a claimant is less credible solely because the medical record does not evidence the degree of symptoms of which a claimant complains. See Bunnell v. Sullivan, 947 F.2d 341, 346-47 (9th Cir. 1991) ("[T]he adjudicator may not discredit a claimant's testimony of pain . . . solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."). However, an ALJ may base adverse credibility determinations upon "observations of treating and examining physicians . . . regarding . . . the nature, onset, duration, and frequency of the claimant's symptom." Smolen 80 F.3d at 1284 (citation omitted); see 20 C.F.R. § 416.929(c)(2); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997) (holding that ALJs may consider the testimony of physicians "concerning the nature, severity, and effect of the symptoms of which [a claimant] complains").

     Here, the ALJ properly concluded that the "observations of treating and examining physicians" did not support Plaintiff's testimony concerning the "nature, onset, duration, and frequency" of her impairments. Smolen, 80 F.3d at 1284. As an initial matter, it is important to note that the ALJ properly accepted Plaintiff's subjective complaints. Cf. Ghanim v. Colvin, 763 F.3d 1154, 3364 (9th Cir. 2014) (finding that an ALJ erred in concluding that claimant's cognitive functioning undermined reported symptoms of depression and anxiety). Indeed, the ALJ left undisturbed Plaintiff's contentions that she was depressed, prone to mood swings,

and anxious.   However, the ALJ pointed out that the alleged effects of Plaintiff's illnesses were unsupported by the record.   (A.R. 27-30).   The ALJ correctly determined that Plaintiff generally "received routine conservative treatment for complaints of depressive symptoms."   (A.R. at 27).   Additionally, the ALJ pointed out that "there is no medical source statement from a treating physician that endorses the extent of the claimant's alleged functional limitations."   (A.R. at 27).   Likewise, the ALJ also found that no physician had indicated that Plaintiff "is disabled or even has limitations greater than those determined in this decision."   (A.R. at 27).   Because the physicians' reports do not support the alleged "nature, onset, duration, and frequency" of Plaintiff's impairments, the ALJ properly concluded that Plaintiff was not fully credible. Smolen, 80 F.3d at 1284.

2.   Inconsistencies In Plaintiff's Testimony

When evaluating a claimant's credibility, an ALJ may consider "inconsistencies either in claimant's testimony or between her testimony and her conduct." Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (alterations in original) (internal quotation omitted).   In the present case, the ALJ noted that the Plaintiff did engage in some "work activity" after the alleged onset date.   (A.R. at 26).   The ALJ properly posited that, while the work did not constitute substantial gainful activity, it indicated that Plaintiff's "daily activities have been, at least at times, somewhat greater than the claimant has generally reported."   (A.R. at 26). Additionally, the ALJ noted Plaintiff's statement that she could

15

perform a job "putting shoes in boxes all day with normal breaks as long as she was able to stand up or sit down as needed." (A.R. at 26, 53-54). As the ALJ correctly pointed out, it was only upon leading questioning by counsel that Plaintiff stated she would be unable to perform the job if she were around co-workers. (A.R. at 26, 56). Accordingly, the Court finds that the ALJ properly relied on inconsistencies "in claimant's testimony [and] between her testimony and her conduct" in his credibility determination. Thomas, 278 F.3d at 958-59.

3.    Examination of the Record as a Whole

Plaintiff also contends that the ALJ improperly relied on isolated instances of mental health improvement while ignoring relevant evidence of Plaintiff's disability. (Joint Stip. at 12). Based on the relevant law, the Court appropriately construes this as a contention that the ALJ erred in discounting Plaintiff's credibility. See Garrison, 759 F.3d at 1016-17 (considering whether an ALJ properly considered the record as a whole when discrediting claimant's mental health testimony).

"[I]t is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding that a claimant is capable of working." Garrison, 759 F.3d at 1017; see also Holohan v. Massanari, 246 F.3d 1195, 1200 (9th Cir. 2001). Rather, instances of improvement "in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of

16

her symptoms." Garrison, 759 F.3d at 1017 (citation omitted); see also Buck v. Colvin, 540 F.App'x 772, 773 (9th Cir. 2013) (acknowledging that bipolar and depressive disorders are episodic illnesses and that "short lived improvements in functioning are consistent with the diagnosis"). Accordingly, "[w]hile ALJs must rely on examples to show why they do not believe a claimant is credible, the data points they choose must *in fact* constitute examples of broader development." Garrison, 759 F.3d at 1018.

After reviewing the record in its entirety, the Court finds that the ALJ interpreted Plaintiff's medical records "with an understanding of [Plaintiff's] overall well-being and the nature of her symptoms." Garrison, 759 F.3d at 1017. In his decision, the ALJ "describe[d] [Plaintiff's] symptoms, course of treatment, and bouts of remission," concluding that Plaintiff's condition was generally stable throughout the record. See id. at 1018. The ALJ correctly noted that Plaintiff often reported to her treating psychiatrists that her mood was good or had improved. (A.R. at 27, 260, 264, 304, 308-09, 538-39).

The ALJ also noted that Plaintiff's physicians' objective findings, including GAF scores, supported repeated findings of mental and emotional stability.[3] (A.R. 27-28). Furthermore, the record indicates that even when Plaintiff's treating doctors reported

---

[3] While the ALJ acknowledged Plaintiff's GAF scores, the ALJ also found that they were of "limited evidentiary value" and provided "only snapshots of impaired and improved behavior." (A.R. at 30); see Garner v. Colvin, No. 13-35797 2015 WL 5603975, at *2 (9th Cir. Sept. 25, 2015).

symptomatic episodes, they often found that her cognitive abilities remained normal. (A.R. at 27-29, 234, 255, 260, 268, 288, 292, 296, 299, 303). For instance, Plaintiff's records indicate that her memory, cognitive functioning, judgment, insight, and impulse control were regularly "intact" or "grossly intact." (A.R. at 234, 255, 292, 303, 307, 309). Plaintiff's treating physicians generally made these findings even when she was also found to be anxious, hyperactive, or otherwise symptomatic. (A.R. at 295, 298, 300, 302, 304). Based on a review of the record, it is evident that the ALJ did not merely "pick out a few isolated instances of improvement over a period of months or years and [] treat them as a basis for concluding that a claimant is capable of working." Garrison, 759 F.3d at 1017.

Based on the foregoing analyses, the Court finds that the ALJ properly found that Plaintiff was only "partially credible." (A.R. at 26). Furthermore, the ALJ did in fact address Plaintiff's testimony regarding her symptoms, including those on her "good days" and "bad days," in finding that her testimony regarding the severity of her symptoms was less than fully credible. "This represents the type of credibility determination charged to the ALJ which [the Court] may not disturb where, as here, the evidence reasonably supports the ALJ's decision." Stubbs-Danielson, 539 F.3d at 1174.

//
//
//
//
//
//

18

**C.    The ALJ Properly Considered the Medical Evidence of Plaintiff's Mental Impairments**

1.    The ALJ's Consideration of Dr. Bagner's Findings

Plaintiff asserts that the ALJ improperly disregarded Dr. Bagner's findings that Plaintiff was "moderately" impaired in various functional areas.  Further, Plaintiff also alleges that accounting for such limitations would have precluded Plaintiff from even "simple tasks and simple work related decisions."  (Joint Stip. at 7-9). However, the Court is unaware of any controlling authority holding that moderate limitations foreclose the possibility that a claimant can perform "simple tasks and simple work related decisions."  (A.R. at 25).  On the contrary, courts have repeatedly found that moderate limitations in various areas of mental functioning are consistent with a finding that a claimant is not disabled.  See, e.g. Stubbs-Danielson, 539 F.3d at 1173-74 (where two physicians opined that claimant was moderately limited in certain mental areas, the ALJ permissibly concluded that Plaintiff could do simple tasks); Valentine v. Comm'r Soc. Sec. Admin., 574 F.3d 685, 691 (9th Cir. 2009) (moderate impairment in various functional areas was consistent with the ability to perform more than simple work); see also Sabin v. Astrue, 337 F.App'x 617, 620-21 (9th Cir. 2009) (moderate difficulties with concentration, persistence, or pace are consistent with the ability to accomplish simple, repetitive tasks).  Because the ALJ's RFC determination is consistent with Dr. Bagner's finding of moderate limitations, the ALJ was not required to embark upon the normal analysis involved in rejecting the opinion of an examining

19

consultative physician.[4]   As a result, he did not err in his treatment of Dr. Bagner's opinions.

2.   The ALJ's Interpretation of Medical Data

Plaintiff alleges that the ALJ impermissibly interpreted raw medical data despite his lack of medical expertise. (Joint Stip. at 11).   Some courts have determined that "an ALJ is 'simply not qualified to interpret raw medical data in functional terms.'"   Padilla v. Astrue, 541 F.Supp.2d 1102, 1106 (C.D. Cal. 2008) (quoting Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999)); see also Day v. Weinberger, 522 F.2d 1154, 1156 (9th Cir. 1975) (citation omitted) (the ALJ, "who [was] not a qualified medical expert, should not have gone outside the record to the medical textbooks for the purpose of making his own exploration and assessment as to claimant's medical condition").   However, the Court is unaware of any case where the Ninth Circuit has conclusively held that an ALJ may not use or interpret the medical record in a disability determination.[5]   Rather, an ALJ is permitted to consider a claimant's medical record when choosing to credit or discredit the

_____

[4] Ordinarily, an ALJ may reject the uncontroverted opinion of an examining consultative physician only for "clear and convincing reasons." Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (internal quotation omitted).

[5] Plaintiff argues that the Ninth Circuit has issued controlling authority holding that an ALJ may not interpret "raw medical data in functional terms." (Joint Stip. at 11).   In support of this proposition, Plaintiff cites Miller v. Astrue, 695 F.Supp.2d 1042, 1048 (C.D. Cal. 2010). Miller is, as the citation shows, a District Court decision, and therefore not binding upon this Court.

opinions of physicians or determine whether a claimant is disabled. See Embrey, 849 F.2d at 421-22 (an ALJ may set aside the conclusions of even a treating physician if the ALJ's decision is based on specific, clear and convincing reasons supported by the record); see also Carmickle, 533 F.3d at 1164 (quoting Lester v. Chater, 81 F.3d 821, 831 (9th Cir. 1995)).

In this case, the ALJ permissibly relied on the record and the findings of various physicians when making his disability determination. The ALJ gave great weight to the opinions Dr. Bagner, as well as considerable weight to the opinions of the State Agency physicians. (A.R. at 29). The ALJ did so after finding that the opinions of these physicians were largely supported by the medical record.[6] (A.R. at 28-29).

Plaintiff also alleges that the ALJ's treatment of her January, 2013, hospitalization was improper, and that the ALJ was unqualified to consider its medical significance. (Joint Stip at 11-12). In his written decision, the ALJ discussed Plaintiff's hospitalization in objective terms supported by the record, merely noting why she was admitted, her symptoms and diagnosis, and her prognosis upon discharge. (A.R. at 29). This included an acknowledgment that Plaintiff "was treated accordingly with appropriate medication" and

---

[6] Indeed, a thorough review of the record reveals that, were the ALJ to have assessed Plaintiff's limitations in the way that she urges, he would have been required to disregard the conclusions of several examining physicians, interpret the raw medical data of the medical records himself, and substitute his own medical conclusions for that of multiple examining and treating physicians. As the Court notes, such an analysis is impermissible. See Carmickle 533 F.3d at 1164.

that her status improved before she was discharged.  (A.R. at 29).
Furthermore, the hospital discharge records do not indicate a long
term prognosis or that hospitalization is likely to recur.  (A.R. at
584).  As a result, by merely noting the objective findings within
the medical record, the ALJ was not required to engage in the usual
analysis of crediting or discrediting a physician's opinion.  Indeed,
the ALJ's acknowledgment that Plaintiff was not given any special
instructions on discharge seems to support the ALJ's finding of non-
disability, rather than undermine it.  Accordingly, the ALJ's
treatment of Plaintiff's January, 2013, hospitalization was
permissible.

3.   The ALJ's Hypothetical Questions to the Vocational Expert

At steps four and five of the sequential evaluation, an ALJ may
ask a vocational expert hypothetical questions to determine what
types of jobs a claimant is capable of performing.  See 20 C.F.R.
§ 416.966(e).  "Hypothetical questions asked of the vocational expert
must set out all of the claimant's impairments." Lewis v. Apfel, 236
F.3d 503, 517 (9th Cir. 2001) (internal quotations omitted).  "If the
record does not support the assumptions in the hypothetical, the
vocational expert's opinion has no evidentiary value." Id.  Here,
the ALJ posed proper hypothetical questions to the VE.  As noted
above, the ALJ correctly analyzed Plaintiff's mental limitations and
medical history.  Additionally, he appropriately included these
findings and limitations in his questions to the VE.  Therefore, the
ALJ's hypothetical questions to the VE were not flawed.  Consequently
the Court finds no error at step five.

**D.   The Errors Committed by the ALJ Are Harmless**

"[H]armless error applies in the Social Security context." Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006).   Courts may uphold an ALJ's determination "where the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." Id. at 1055.

1.   Plaintiff's Noncompliance with Treatment

Generally, an ALJ may base an adverse credibility finding upon evidence that Plaintiff failed to seek treatment or failed to follow a prescribed course of treatment. Smolen, 80 F.3d at 1284 (citations omitted).   However, an ALJ may not infer that a mental impairment is less severe than alleged based on a perceived failure to seek treatment. Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996) (citation omitted) (acknowledging that depression is a greatly underreported illness and that disability claimants should not be punished for failing to recognize the illness or seek treatment). Furthermore, at least one Ninth Circuit panel has recognized that noncompliance with treatment may be a symptom of bipolar disorder. Wake v. Comm'r of Soc. Sec., 461 F.App'x 608, 609 (9th Cir. 2011) (citing Nguyen, 100 F.3d at 1465).   Thus, in cases involving claimants with mental disorders, it is advisable for ALJs to consider how a claimant's mental impairments affect a claimant's "efforts to comply with her prescribed treatment regimen." Id. As a result, it can be error for an ALJ to determine that a claimant's failure to comply with treatment supports an adverse credibility finding. See

23

Garrison, 759 F.3d at 1018 n.24 (citations omitted) ("[W]e do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

Here, the ALJ failed to properly consider Plaintiff's noncompliance with her course of treatment. As the ALJ noted, many of Plaintiff's most problematic depressive episodes occurred after she had ceased taking her physician prescribed medication for a period of time. (A.R. at 26-28). However, the ALJ interpreted this evidence to mean that Plaintiff's symptoms were less severe than alleged. (A.R. at 26-28). Notwithstanding this error, the Court finds that the ALJ's credibility determination should remain undisturbed. See Batson 359 F.3d at 1197 (finding harmless error where ALJ's credibility determination was supported by other permissible reasons and objective medical evidence). Because the ALJ's credibility finding stands, any error in considering Plaintiff's noncompliance with medication is harmless.

## CONCLUSION

The legally valid reasons given by the ALJ for discounting Plaintiff's credibility sufficiently allow the Court to conclude that the ALJ's credibility finding was based on permissible grounds. The Court therefore defers to the ALJ's credibility determination. See Lasich v. Astrue, 252 F.App'x 823, 825 (9th Cir. 2007) (court will defer to ALJ's credibility determination when the proper process is

used and proper reasons for the decision are provided); accord Flaten v. Sec'y of Health and Human Serv., 44 F.3d 1453, 1464 (9th Cir. 1995).  Furthermore, the Court finds that the ALJ's other findings are based on sufficient evidence and, therefore, [the Court] may not substitute its judgment for that of the ALJ."  Batson 359 F.3d at 1196.

**ORDER**

    For all of the foregoing reasons, the decision of the Administrative Law Judge is affirmed.


    LET JUDGMENT BE ENTERED ACCORDINGLY.


Dated: November 20, 2015.

                              _____
                                        /s/
                                   ALKA SAGAR
                         UNITED STATES MAGISTRATE JUDGE